All right. This is judge Hamilton. I'm just joining now for the first time this morning. Um, and, uh, let's see. I, for some reason did not get the time limits. Could judge Brennan, can you tell me what the time limits are here? I have, uh, 10 minutes per side, 15 minutes per side. Okay. Um, great. And then, uh, Ms. Boyle, can you hear me? All right. I can your honor. Thank you. All right. Uh, and, uh, judge Mannion, I assume you're on my phone. Is that right? I am my phone. Yes. All right. Great. Mr. Palmer and Ms. Rashad, I note your presence as well. Um, Ms. Torlein, go ahead. Good morning, your honors, and may it please the court. My name is Hannah Torlein and I, along with my co-counsel, Yara Rashad, represent the appellant, Mr. Earl Orr. Mr. Rashad and I are recent Notre Dame law school graduates who have been appointed by the court to argue this case. And today we are appearing under the supervision of Bob Palmer. Mr. Orr was convicted in June of 2018 of possession of a firearm by a felon in violation of 18 USC section 922 G. He was sentenced to 210 months in prison. Mr. Orr appeals his conviction on four grounds. I would like to use the first part of appellant's time to discuss two evidentiary issues. First, the admission of drug evidence. And second, the admission of Mr. Orr's prior convictions. Mr. Rashad will use the remainder of our time to discuss Judge Bruce's ex parte communications with the prosecution. Regarding the search warrant issue, we will rest on our briefs. Turning to the first evidentiary issue, the district court abused its discretion by admitting into evidence the controlled buys, drugs, and drug paraphernalia found at Mr. Orr's residence. Prior to trial, the government submitted a motion in limine, seeking to admit this drug evidence. The district court granted the motion, but conditioned its grant on the defense placing motive at issue during trial. Because the defense never did place motive at issue, the admission of this evidence was improper. Ms. Torlein, did the defendant place motive at issue by denying the question posed by the prosecutor? No, your honor. That question asked by the prosecutor, was the prosecutor placing motive at issue and opening the door themselves. The defendant prior to this had never indicated that they were denying that motive might be an issue or that the defendant might have a motive for possessing a firearm. Thank you, your honor. The other three instances that the government points to also were not enough to place motive at issue. First, the government pointed to the defense's opening statement where Mr. Orr's attorney stated that nothing besides Mr. Orr's admission that the gun was his tied him to the firearm. But this claim itself is not a meaningful dispute of motive. It is not even referencing the specific matter of motive at all. Instead, this was simply a broad statement that the government had not met its burden of proof in this case. And Miller tells us that if a mere claim of innocence were enough to automatically put intent or hear motive at issue, the resulting exception would swallow the general rule. That's such a broad general opening statement by the defense was not enough to place motive in particular at issue. The government is, I understand that judge Bruce applied that standard in the pretrial ruling on the motion of limiting. Do you think that ruling was required? Um, that is, is the, as a general rule, is the, is the government prohibited from offering motive evidence under 404 B unless the defendant has put motive at issue? Your honor, not necessarily unless the defendant has placed motive at issue, but we have to do a general balancing of probative versus prejudicial weight. And in this case, one of the things that made and Schmidt, this evidence important was the fact that the defense themselves during trial had placed motive at issue. So here the defendant had claimed had already stipulated to the fact that he was a prior felon. So unless he was specifically denying motive, this was not going to be probative as to whether the defendant might have a motive for possessing the firearm. And here there are many other ways that the defense that the government might have been able to prove that Mr. Orr constructively possessed a firearm, not specifically in this case, but if it was just generally that motive was always an issue, then they could bring in any piece of evidence. Thank you. Your tour line. If we are, um, um, specifically in the, uh, transcript pages 44 and 45, uh, the prosecutor's offering, um, uh, the rationale for why he posed the question, the jury is out of the room. Um, the prosecutor states, and I'm at page 44 lines six through eight. I don't know how we can dispute at this point that a motive for a firearm is not an issue. And then at line 13, the prosecutor says, I believe that's proper evidence of motive. The court then shifts the inquiry to the defense council, uh, says, Mr. Welch, do you dispute based on the answers that have been given that that's where we are at this point. And then at the bottom of page 44, the transition, the defense attorney says, I would stand on the motion. I would just stand on the motion that I made regarding the other criminal activity. But your honor, I suppose, in answer to your specific question, I believe we probably are at that point. Is that a admission by the defense attorney at that juncture that, um, we're at the point of motive? And what does that mean? Do you think? Your honor, we do think that's a somewhat confusing statement by the defense attorney, but first the government in its brief, does seem to concede that this should be abuse of discretion review. Um, and as soon as this question was asked by the prosecutor, they went to the sidebar and it seemed to be the discussion of whether or not this evidence should come in. And the defense attorney does say, I stand on my motion, meaning his motion in limine. So we think that this is enough of an objection to still trigger abuse of discretion review. But we also believe that this evidence would still fail even if this court applies plain air. Your honor is moving to the second evidentiary issue. The district court aired when it admitted the particulars of Mr. Orr's prior convictions. The appellant referring to the same, same, uh, space spot in the trial, your honor maintains that he did object to the admission of his prior convictions. Since shortly after the government questioned Mr. Orr about them defense attorney said to the judge that I would stand on the motion that I made regarding the other criminal activity referring, we at least see to Mr. Orr's prior convictions still here, the district court's decision to admit this evidence wasn't proper under either an abuse of discretion or a plain air standard. The government contends that the prior convictions were probative of Mr. Orr's general credibility. So here we turn to the federal rule of evidence six Oh nine, which tells us that these prior convictions can be used only if the probative value of the evidence outweighs its prejudicial effect to that defendant. And this was not the case for Mr. Orr. The impeachment value of these prior convictions was almost zero while the government claims it wanted to admit this conviction to make Mr. Orr seem less believable or to color his testimony. His crime was not one bearing directly on credibility, such as perjury or fraud. And Mr. Orr had already stipulated to being a convicted felon in general. Thus, the only additional purpose that the prosecutor could have had in laying out the particulars of his conviction was to paint a detailed picture of Mr. Orr's criminal history, specifically as a drug dealer. And this brings us back to the motive inquiry for which we know that Mr. Orr's prior convictions were inadmissible. In short, we know that prior to one, let's do, if I could interrupt for a second. Um, I certainly would understand this argument better if Mr. Uh, or had not taken the stand, but I guess I had always been under the impression that for impeachment purposes, a conviction could be used, um, at least with the date and the name of the crime, um, the date of conviction, the name of the crime would typically come in without lovingly exploring all the details and, uh, of the prior crime for these purposes. And we are on an abuse of discretion review, apart from the issues about judge Bruce's, uh, status. So I guess I'm, I'm what's what, what was so bad about what went over the, the usual line here. Your honor. The fact is that this serves no impeachment value. So if Mr. Orr had claimed that he wasn't dealing drugs, if he had claimed that he was how to even had just a great character. And if the defense attorney was claiming, he's a great guy that might serve some value, but here there is no impeachment value under six or nine that this even could serve. That because of the nature of the crime, because the six or nine B the presumption is that essentially any felony conviction has impeachment value to with respect to overall character and credibility. Yes, your honor. And the reason that this serves no additional value is because we already knew that Mr. Orr was a convicted felon. And so really we have to look at what the, what the government is trying to do with this evidence. And it's not to say he's a convicted felon and we need to tell you what the conviction are so that this impeaches his credibility. It's to say he's a convicted felon and we want him to paint him as a drug dealer. And it's really going back to the motive inquiry. They're trying to get this storyline at this point, you're past your nine minute mark. I'm not sure exactly how that fits into your distribution of responsibilities. So yes, your honor. If there are no more questions, I will turn it over to my co-counsel. All right. Thank you. Ms. Rashad. Yes, your honor. Good morning. Your honor. May it please the court. My name is Yara Rashad and I represent the appellant, Mr. Earl Orr. Mr. Orr is entitled to a new trial because judge Bruce's violation of the federal recusal statute was not harmless. Approximately two months after Mr. Orr's trial, it became public that judge Bruce had engaged in ex parte communications with members of the United States attorney's office for the central district of Illinois. As a result of these communications, Mr. Orr's case was reassigned to chief judge Sarah Darrow. At the time, Mr. Orr's case was reassigned. Judge Bruce had already presided over the entirety of Mr. Orr's trial. Under 28 USC section four 55 a, a judge is required to accuse himself from any proceeding in which his impartiality might reasonably be questioned. The government concedes that judge Bruce violated the federal recusal statute. The remaining issue is whether judge Bruce's violation was harmless. To determine whether a judge's violation of the federal recusal statute is harmless error. This court looks to three factors outlined in Lilja Berg versus health services acquisition corporation, turning to the first factor, the risk of harm to the public's confidence in the impartiality of the judiciary in both the United States of the Atwood and United States view Williams. This court focused on the amount of discretion exercised by a judge to defendant or the government and Atwood this factor favored the defendant because judge Bruce exercised ample discretion in sentencing in Williams. This court found this factor slightly favored the government, but that it was quote a close call. In analyzing this factor, the Williams court specifically focused on the lack of substantial discretion in judge Bruce's rulings. In that case, in fact, the court specifically indicated that it could reach a different conclusion in a case where a judge exercised more substantial discretion and whose rulings had a significant impact on the outcome of the case. And that's exactly what we have here. In this case, judge Bruce exercised more substantial discretion than in Williams. These discretionary decisions had a significant impact on Mr. Orr's trial because they led to the admission of evidence that was essential to the prosecution's case. The jury undoubtedly relied upon this evidence when coming to its decision, whether the government proved its case beyond a reasonable doubt. Turning to the second factor, the risk of injustice to the parties in United States of the Atwood, this court held that the risk of injustice to the defendant outweighed the risk of injustice to the government because judge Bruce's discretion in sentencing invited the risk that his personal biases will influence or appear to influence the sentence he imposed. Contrarily in United States v. Williams, this court found this factor favored the government because judge Bruce did not exercise the same amount of discretion as an Atwood. Specifically, the court focused on the fact that judge Bruce made minimal rulings before and during trial, neither of which either party challenged on appeal. This case is more akin to Atwood than Williams because judge Bruce exercised a substantial amount of discretion before and during Mr. Orr's trial. And these discretionary decisions had a significant impact on the outcome of the trial. What type of impact Ms. Rashad do you believe those decisions had? Your honor, in this particular case, judge Bruce made a number of pretrial decisions as well as decisions during Mr. Orr's trial. For example, judge Bruce denied Mr. Orr's motion to suppress drug evidence and granted the government's motion in limine to introduce evidence seized during the search of Mr. Orr's residence. Judge Bruce's discretionary decisions here led to the admission of evidence regarding Mr. Orr's drug use, as well as evidence regarding his participation in the controlled drug buys. During trial, judge Bruce made the discretionary decision to decide that motive had been placed at issue, which allowed the government to introduce the evidence of Mr. Orr's drug trafficking activities. In addition, judge Bruce allowed the government to introduce evidence of Mr. Orr's prior convictions and the specifics of those prior convictions. And the jury undoubtedly relied upon this evidence when deciding whether the government had proven its case beyond a reasonable doubt because these decisions involved a substantial amount of discretion and because these decisions likely impacted the jury's decision to convict Mr. Orr. Mr. Orr is entitled to a new trial in this case. Ms. Rashad, would there be any limiting principle? Obviously any judge presiding over a case that goes to trial is going to make decisions. Some discretion is going to be implicated in everything. They're not robotic, right? Is there any limiting principle to the argument you're offering? Certainly, Your Honor, appellant does not contend that every exercise of judicial discretion warrants a new trial or even judge Bruce's exercise of discretion alone warrants a new trial. What's important here is that the judge's discretionary decisions first rely upon his substantial judicial discretion. And second, that these decisions have a significant impact on the outcome of the case. And this sufficiently narrows the class of litigants who would be entitled to a remedy under the federal recusal statute. If judge Bruce had, for example, denied a defendant's motion because the statute of limitations had expired, well, that wouldn't be the type of discretionary decision that would warrant a new trial. But where we have a case like we have here where the decisions,  I see that my time has expired. May I briefly finish the thought, please? Where we have a case here where judge Bruce exercised substantial discretion and where we know that the result of those decisions was the introduction of evidence that favored the government and was essential to the government's case. That's the type of situation where the defendant would be entitled to a new trial. For the foregoing reasons, appellant requests that this court reverse the judgment and grant Mr. Orr a new trial. Thank you. All right. Thank you very much. Counsel. We'll turn now to Ms. Boyle for the United States. Thank you, your honor. Good morning. May it please the court counsel. My name is Catherine Boyle on behalf of the United States. The district court did not air in denying Mr. Orr's motion to suppress, nor did it abuse its discretion or plainly air in admitting evidence of the controlled buys and drugs found at his apartment and evidence of his prior drug conviction. As well, can we go to that second issue? Um, the, um, admission of the drug use and then the conviction, what standard review are you indicating we should, um, utilize? Yes, your honor. So as to the evidence of the controlled buys and the drugs, the government has acknowledged that an abusive discretion standard applies. Um, and then as to the, um, admission of the evidence regarding the prior drug conviction, we believe plain error applies. I understand, um, particularly in the reply brief, they are, Clay, uh, Mr. Orr is still claiming that abusive discretion applies, but we had the conversation that you mentioned at transcript 44, in which the court asked defense counsel, do you dispute based on the answers that have been given that that's where we are at this point. Defense counsel said that he would stand on the motion he made regarding the other activity, but said, and answer your specific question. I believe we probably are at that point. Um, although, um, Mr. Orr has argued that saying he would stand on the motion in regard to the other criminal activity means that he, that issue was preserved. Mr. Orr's motion and lemonade only related to evidence of the controlled buys and drug evidence found in the apartment. Although the judge's ruling also talked briefly about the conviction, Mr. Orr standing on his motion does not implicate any sort of preservation of objection, um, to that conviction in our opinion, your honor. Is boiled and following up on, I'm moving to the evidence of the control buys area, uh, which apparently we've got this agreement and abuse of discretion. Um, I asked Ms. Torlein with regard to the opening of the door, because that is the, if proposition that judge Bruce put in his order on the 404 B is the prosecutors asking the question, the opening of the door, or is in this instance, Mr. Orr's denial, the opening of the door. Well, your honor, first of all, we believe the door was opened prior to the prosecutor's cross-examination of Mr. Orr. Um, we believe that motive was, um, somewhat placed at issue throughout the trial, um, through comments in the opening statement that nothing besides, or his admission that the gun was his tied into the firearm, the repeated suggestion. He only made his admissions to protect his pregnant girlfriend from detention rather than, I don't know, I guess Ms. Boyle, I'm, I'm having trouble with that argument. I, as I, it sounds like he's just, he's pleading not guilty and he's saying the government doesn't have evidence. Um, uh, I, I, I'm really concerned about this issue in the, this notion that the prosecution can open the door for itself with the question, um, about motive, um, in its cross-examination of Mr. Orr. Well, your honor, we, we do think in particular, um, his suggestion that he only made admissions about the gun to protect his pregnant girlfriend from detention. That does bring into question his motive for the admissions about the gun. Um, but I, I have a question about motive for his admissions. It's about question of motive for his possession of the gun. Um, that's a narrower product of that's a quite distinct issue. Yes, your honor. Well, and we also think here, as, as you pointed out during my opposing counsel's argument that the government bringing up motive, um, just as occurred in Schmidt was actually something motive being an issue here. It was actually something that's somewhat inherent to this idea of a joint tenancy case in which you're looking at constructive possession. So not only does the, um, not only do, uh, does the government in a constructive possession case, just as in Schmidt, we believe motive is going to be relevant. Um, that was a very similar case in which the defendant, um, a gun was found in an apartment. The defendant shared with his girlfriend. It was not in his possession at the time it was recovered. Um, and this court has held that mere proximity is not enough. Um, right. But, but judge Bruce may or may not have been right in his pretrial ruling, but it was his pretrial ruling. And then what, and, uh, what, what, what those were the ground rules upon which the case was being tried. Um, and as you, as you well know, the government doesn't have much of a chance to appeal that kind of thing, uh, kind of a trial ruling, but those were the ground rules. And then, um, with this question from the prosecutor, we see basically a one 80 on this, on this problem. Um, I gotta say if, if it, if it were, um, without the issues about judge Bruce's, uh, failure to, to recuse, I'd probably struggle with this about an abuse on an abuse of discretion standard, but I'm really concerned about, um, this highly discretionary, uh, reversal based on the prosecutor's or the prosecutor's question. Yes, Your Honor. Um, we, we believe there are answers that Mr. Orr could have made to the question that still wouldn't render him culpable. Um, the question of, did you have any motive to, um, to have a gun could have been answered with a yes. You know, he had claimed earlier that he had found the gun outside a dumpster and had taken the gun in to make sure local school children didn't find it. He could have, he could have said many things and he said that he would have just admitted possession, right? Uh, yes, Your Honor. That's we've seen prosecutions. That's, that's not a defense, right? Yes, Your Honor. That's correct. Okay. Well, Ms. Boyle, let's say Mr. Um, or had said yes to protect my home and family at that juncture with the district court had been, uh, would have allowed an impeachment to say, no, uh, it was in fact for another purpose. It's, it's the nature of the prosecutor's question. Now there was no objection by Mr. Welch to the question. Um, obviously it was answered and then it was followed up. Um, I'm on page 43 lines 15 through 21. Uh, now you certainly had a good reason to possess a firearm. Didn't you answer? No, sir. Question. You didn't have any reason to possess a firearm answer. I haven't, I haven't touched a firearm in 25 years. That's not the defense who asks to approach the bench. It's the prosecutor, correct? Yes, Your Honor. That's correct. So perhaps you could speak to this idea of is the nature of that prosecutor's question. Now you certainly had a good reason to possess a firearm. Didn't you? Is that a damned if he did damned, if he didn't answer, or are you saying that there are answers that could have been given that wouldn't have implicated Mueller? Well, Your Honor, I think, I think in the context of Mr. Orr and his counsel's other statements at trial, um, claiming sort of no connection to this particular firearm, um, a true acknowledgement that there might be reasons he would, he would have a firearm, could potentially not, um, implicate motive. But here, even if this admission was in error, I think it's important to remember that Mr. Orr's substantial rights really weren't affected in this case in light of the strong evidence of his guilt. Um, so reversal wouldn't be warranted this on that issue. Ms. Boyle, I, I was, I gotta say I was struggling with some parts of your brief because everybody seems to agree that the defendant's credibility was central to this case. Um, and the overwhelming evidence that you point to, um, is all as near as I can tell, based on what the officers testified, the defendant told them, which just is another way of circling back to the issue of credibility. Yes, Your Honor. There were multiple officers in this case who testified that the defendant had told, had made admissions regarding the ownership of the gun. Um, they also said that they found the gun in the exact location that Mr. Orr told them. Um, and we think, um, something else important here is, um, in, in light, in light of this evidence, um, and we, we do believe, and I understand your point, um, that Miss, that judge Bruce had made, um, a trial, a trial ruling as to when this motive evidence would come in. But we still do believe overall, as this court examines, um, whether motive evidence was properly introduced in terms of the rules of evidence and the existing case law. This is a case, um, involving constructive possession where this motive evidence was, was absolutely properly introduced. And I think that's clear from this court's decisions in Schmidt, um, and in other cases and upon an examination of the federal rules of evidence. Um, your honor, if I may, I'd like to turn to, you also had asked about evidence of the defendant's prior drug conviction. Um, as I mentioned before, we believe the plain error standard applies, and we don't believe that the district court plainly aired here and admitting evidence of the prior conviction. Um, as we've noted before, there was a credibility issue when we examine the factors in Gant under 609, whether this type of conviction comes in, um, the court should look at the impeachment value of the prior crime, the point in time of the conviction and the defendant subsequent history, the similarity between the past crime and the charge crime, the importance of the defendant's testimony and the centrality of the credibility issue. Um, here there were clashes on multiple fronts between the officer's testimony and or his testimony. We also believe, uh, especially looking at this court's decision in Toliver, any prejudice here was lessened because the government can find its inquiry to the type and time of conviction. Um, your honor, as, uh, you noted, this was not a case where the, uh, prosecutor went deep into the details of their crime. It was a very short description of the prior felony conviction. Um, also helping, uh, the Gant analysis, Mr. Orr was charged with a firearm offense, not a drug offense, which lessens any prejudicial effect of this introduction. And importantly, the court gave a limiting instruction here as well. Um, so we believe that conviction was properly admitted. Um, and even if this court were to decide that it weren't, again, we believe in light of the evidence of trial, um, that there was no evidence that Mr. Orr's substantial rights were affected. I'd like to turn, let's talk a little bit about that limiting instruction was dispute between the parties, uh, or discussion in the, in the record on the record, with regard to the use of that limiting instruction. Your honor. I don't believe there was any objection to the limiting instruction on the part of the defense council that I can recall. All right. I've not looked at the instruction. I'll have to take a look at it. Thank you. That's my, that's my memory. Your honor. Um, I'd like to turn, since I'm running a little bit lower on time to the appearance of partiality issue, as I've mentioned earlier, the government concedes that a reasonable person might question judge Bruce's impartiality based on the ex parte emails. But this court should decline to vacate the jury's guilty verdict because any appearance of partiality did not affect that verdict, viewed through the lens of this court's recent decision in Williams. Although there was a statutory violation of four 55 a and any error was harmless. The error was harmless as Williams. We believe this court should look at the Liljeburg factors, which include the risk of injustice to the parties in a particular case, the risk that denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process. And examination of these factors here show that the air was harmless as to Mr. Or, um, here, the risk of injustice was allowed to the particular parties. As in Williams, none of judge Bruce's ex parte communications involved Mr. Or's case. And really looking at Williams in some ways, or Mr. Or's case was even further separated because in Williams, you had a prosecutor and a paralegal who was to an extent featured in some of the ex parte communications who worked on that trial. And in Mr. Or's case, that was, that was not the case. Uh, further, Mr. Williams and Mr. Or were both found guilty by a jury rather than judge Bruce. And neither questioned the jury's impartiality. Um, importantly in light of the Atwood decision, neither defendant was sentenced by judge Bruce. Um, although we. Could you address more directly though, I think this, I've got to say this, um, the Williams opinion seems to contemplate this kind of case where you've got some pretty important trial decisions being made, highly discretionary, uh, about under 404 B under 609 B. We've got this, uh, this question about who's introducing the, the issue of motive, um, and, uh, in a reversal, as it appears to me anyway, of the trial judges. Pre-trial decision. Um, and that's, I mean, both forms of evidence are treated as highly prejudicial. They can come in under appropriate circumstances, but, uh, I I'm, I'm just really, really troubled here. Um, we're not talking about the kind of trauma for victims that the retrial in Williams might have inflicted. Uh, instead we're talking about officers primarily coming in and describing, uh, um, the search and conversations they say they had with the defendant. Yes, your honor. Um, and although of course the government's position is that those discretionary decisions were correct. We do think it's important also that even if they weren't correct, if you look at the entire case and the strength of the evidence submitted, um, we believe that even without the evidence of the prior drug conviction and the evidence of these controlled buys, that the outcome would have been the same. And we think that's an important factor here, um, in evaluating sort of the integrity of the jury's verdict. And I also, since I haven't discussed it, want to just briefly say that we think on the merits, it's very clear that the motion suppressed was correctly denied. And we would also hope that given this court's review of those discretionary decisions, that is something that could increase public confidence, um, to a measure that these decisions were correctly made. Um, this boiled your, your time's expiring, but I wanted to just ask a follow up quickly if I could with the patients of my colleagues about the motion to suppress, um, the, uh, I was troubled by some of the omitted information about the CIS criminal history, but obviously you've got these controlled buys, um, with, with video, was there video for all five of them? No, your honor, there was video for three of the controlled buys, but not all five. Okay. Um, and all five of those, buys were set up with phone contacts between the CI and Mr. Or is that right? That's correct. Your honor. And I also should note that although there were not, was not video for everybody, there was surveillance for everybody. Okay. Thanks very much. Uh, anybody have any further questions for Ms. Boyle? I do not. Okay. Thank you very much. Um, let's see, we'll switch to a rebuttal. Who's taking on that for the defense. Your honor. I can do rebuttal. Um, I know we have no time left on our phone. Take, take two minutes. That's sort of my standard for, uh, for rebuttal, even when we've used up all your time with questions. Okay. Thank you, your honor. We would like to discuss just three quick things that have to do with the evidentiary issue. First, the government seems to distinguish, um, the standard of review for the two issues based on what was stated in the defendant's motion and lemonade. And the language from that is actually very general that it relates to any drug related activity, which we think would also include prior drug convictions. Second, we would like to distinguish Schmidt and just the general idea that constructive possession in this type of case is enough to automatically put intent to put motive at issue and Schmidt officers found an AR 15 rifle with two fully loaded magazines and drugs in his home. And they had evidence. The defendant had exchanged large quantities of drugs for the rifle, which is a much closer connection to the drug deals and the rifle and Schmidt than it was here in this case, where there was no evidence that Mr. Orr had ever carried a firearm during any of these controlled buys. It was an unloaded handgun, not found in plain view. The ammunition did not match the gun. And, uh, the drugs were not found in the same closet. Your honor. Second or thirdly, with respect to substantial rights, we think that the substantial rights question is largely in our favor. Uh, United States D Miller is particularly enlightening here. And in that case, this court found that the defendant's drug convictions were not supported by sufficiently independent evidence, despite the fact that police found a scale suitable for measuring drugs and crack cocaine packaged for distribution with the defendant's personal pet papers packaged together. And the defendant tried to flee the scene and ask a witness to lie about where he was living in the house. Still the government said that this independent evidence was not enough. And here we have only three pieces of evidence that the government points to, and none of them are largely independent. And as your honor has mentioned, they rely largely on believing the officers in this case. So with that, we would ask to reverse the judgment and grant Mr. Orr a new trial. Thank you. All right. Thanks to all counsel. Um, thanks to Ms. Boyle, who is well known to this court for excellent advocacy and also to the, uh, recent Notre Dame graduates, uh, Ms. Torlein and Ms. Rashad, congratulations to you and our thanks to you and to Mr. Palmer for taking on the appointment. Uh, you've been a great help to your client and to the court with that, we will stand in recess. Uh, judges on this case, we'll reconvene in about 10 minutes by conference call. And with that, we'll stand in recess. Thanks very much.